v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–1002–JV–100.

Court of Appeals of Indiana.

Oct. 14, 2010.

Patricia Caress McMath, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Angela N. Sanchez, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issues

Pursuant to a plea agreement with the State, D.C. admitted he committed an act that would have been burglary, a Class A felony, if committed by an adult, and was adjudicated a delinquent. The juvenile court ordered D.C. committed to the Indiana Department of Correction ("DOC") for a determinate commitment of 24 months and also ordered an indeterminate commitment to the DOC until he reached the age of twenty-one. D.C. appeals the disposition, raising two issues for our review: 1) whether the juvenile court abused its discretion by committing him to the DOC when there was a less restrictive alternative available; and 2) whether the juvenile court erred by imposing both a determinate and an indeter-

minate commitment. Concluding the juvenile court did not abuse its discretion in ordering a commitment to the DOC but erroneously ordered both a determinate and an indeterminate commitment where those dispositions are mutually exclusive by statute, we affirm in part and reverse and remand in part.

### Facts and Procedural History

D.C. was part of a group who broke into the home of an elderly woman in the early morning hours looking for money. Nothing was ultimately taken from the home, but the woman was injured during the incident. The State filed a delinquency petition alleging D.C. committed burglary, a Class A felony if committed by an adult, attempted robbery, a Class B felony if committed by an adult, and battery, a Class C felony if committed by an adult. D.C. and the State entered a plea agreement providing D.C. would admit to the burglary allegation and the State would move to dismiss the other allegations in this case as well as several probation violations in other cases. Disposition was left open to the juvenile court. Following a dispositional hearing, the juvenile court entered the following dispositional order:

> The Court awards Wardship to the Indiana Department of Correction for housing in any correctional facility for children until the age of 21, unless sooner released by the Department of Corrections [sic], and [D.C.] is detained pending transfer.

> The Court as part of its disposition, orders [p]ursuant to IC 31–37–19–10, finds that [D.C.] committed an act that would be: burglary as a class A or class B felony and was at least 14 years old at the time the delinquency act was committed and has unrelated prior adjudications of delinquency for acts that would be felonies if committed by an adult. The Court Orders:

[D.C.] be committed to Department of Correction for a determinant [sic] sentence of 24 [m]onths[.] The Court also orders that [D.C.] be committed to the Department of Correction under I.C. 31–37–19–6 and that he remain in the care and custody of the Department of Correction until he has reached the age of twenty-one (21).

Appellant's Appendix at 13. D.C. filed a motion to correct errors, alleging the juvenile court erred by imposing both a determinate and an indeterminate commitment and requesting the dispositional order be amended. The motion to correct errors was denied, and this appeal ensued.

### Discussion and Decision

### I. Least Restrictive Alternative

D.C. first argues the trial court erred by ordering him committed to the DOC when there was a less restrictive placement available. At the dispositional hearing, Sophia Mustaklem, a juvenile alternative placement coordinator with the Marion County Public Defender Agency, testified D.C. had been accepted into the Resource Shape Program, a secure facility with individual, group, and family therapy, an on-ground school, and a substance abuse program. Nonetheless, the juvenile court ordered him committed to the DOC.

■ The choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the discretion of the juvenile court and we will reverse a dispositional order only if there has been an abuse of that discretion. *J.S. v. State,* 881 N.E.2d 26, 28 (Ind.Ct.App.2008). The juvenile court's discretion is subject to the following statutory considerations:

If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:

(1) is:

 (A) in the least restrictive (most family like) and most appropriate setting available; and

 (B) close to the parents' home, consistent with the best interest and special needs of the child;

(2) least interferes with family autonomy;

(3) is least disruptive of family life;

(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Ind.Code § 31–37–18–6. Although the statute requires the juvenile court to select the least restrictive placement in most circumstances, it also allows leeway for a more restrictive placement when appropriate. *J.S.,* 881 N.E.2d at 28–29. That is, the least restrictive placement is only required if it is consistent with the "safety of the community and the best interest of the child." Ind.Code § 31–37–18–6.

■ D.C. contends the juvenile court's placement was punitive and not in his best interests or in the interest of the community's safety. However, the availability of a less restrictive alternative does not mean the juvenile court was required to order that placement. D.C., who was fourteen years old at the time of the dispositional hearing, had a lengthy history of juvenile adjudications dating back three years and had been in home-based therapy and had two residential stays at two different facilities. He has been on probation since September 2006. Although he did well while in a structured environment, the longest he went without re-offending while out of a residential facility was four months. D.C.'s current adjudication was for an incident which would have been a Class A

felony if committed by an adult and which caused considerable injury to an elderly woman and ultimately resulted in her being unable to continue living alone. D.C. has failed to parlay the good behavior he exhibited while in residential facilities into a permanent lifestyle change once out. Given the serious nature of D.C.'s offense and the likelihood that he will reoffend, this is clearly a situation in which commitment to a less restrictive environment than DOC is not in the best interest of D.C. or of the community. *See J.J. v. State*, 925 N.E.2d 796, 802 (Ind.Ct.App.2010) (affirming commitment of juvenile to DOC where juvenile had been offered numerous means for rehabilitation but "has continued to reoffend and disrespect the rule of law and his fellow citizens"), *trans. denied*. The juvenile court did not abuse its discretion by ordering D.C. committed to the DOC.

## II. Determinate and Indeterminate Commitments

 Although acknowledging the juvenile court has the authority to order a determinate or an indeterminate commitment, D.C. contends the trial court erred by ordering both simultaneously. The question raised by D.C. is a question of statutory interpretation and therefore a de novo standard of review applies. *In re M.W.*, 913 N.E.2d 784, 786 (Ind.Ct.App. 2009). We give no deference to the trial court's decision; rather, we follow the cardinal rule of statutory construction: if the statute is unambiguous, we need not and do not interpret the statute but apply its plain and clear meaning. *Id.* If the statute

is susceptible to more than one reasonable interpretation, it is ambiguous and we must determine legislative intent and interpret the statute to give effect to that intent. *Maroney v. State*, 849 N.E.2d 745, 748 (Ind.Ct.App.2006). Statutes must be read in harmony with related statutes. *St. Margaret Mercy Healthcare Ctrs., Inc. v. Poland*, 828 N.E.2d 396, 402 (Ind.Ct.App. 2005), *trans. denied*.

Indiana Code chapter 31–37–19 deals in part with dispositional decrees for children determined to be delinquent for committing an act that would be an offense if committed by an adult. *See* Ind.Code §§ 31–37–1–1, –2. Section 31–37–19–6 provides for committing a juvenile to the DOC for an indeterminate term:

*Except as provided in section 10 of this chapter* and subject to section 6.5 of this chapter, the juvenile court may:

(1) enter any dispositional decree specified in section 5 of this chapter; and

(2) take any of the following actions:

(A) Award wardship to:

(i) the department of correction for housing in a correctional facility for children; or

(ii) a community based correctional facility for children....

Ind.Code § 31–37–19–6(b) (emphasis added).[1] The parties agree that if the juvenile court awards wardship of a juvenile to the DOC under this statute, the DOC determines both the placement and the duration of the placement. *See Matter of Tina T.*, 579 N.E.2d 48, 61 (Ind.1991) (noting that if

---

1. Section 31–37–19–5 states that the juvenile court may, in addition to an order under section 6, order at least one of the following: supervision of the child by the probation department; outpatient treatment; surrender of the child's driver's license; restitution; emancipation; attendance at an alcohol and drug services program; or, under certain condi-

tions not applicable in this case, wardship by the DOC for a fixed period that is not longer than the date the child turns eighteen. Section 31–37–19–6.5 imposes restrictions upon the juvenile court's ability to order the child removed from his or her home and placed in another home or shelter care facility. *See* Ind.Code 31–37–19–6(b)(2)(D).

wardship is awarded to the DOC, "such commitment ... may be terminated upon the determination of the DOC that a less restrictive placement has become appropriate"). Section 31–37–19–10 provides for committing a juvenile to the DOC for a determinate term under certain circumstances:

(a) This section applies to a child who:

(1) is adjudicated a delinquent child for an act that if committed by an adult would be:

\* \* \*

(C) burglary as a Class A or Class B felony under IC 35–43–2–1;

(2) is at least fourteen (14) years of age at the time the child committed the act for which the child is being placed; and

(3) has two (2) unrelated prior adjudications of delinquency for acts that would be felonies if committed by an adult.

(b) A court may place the child in a facility authorized under this chapter for not more than two (2) years.

(c) Notwithstanding IC 11–10–2–5, the department of correction may not reduce the period ordered under this section. . . .

D.C. concedes he falls within the provisions of section 10, as he was adjudicated a delinquent for an act that would be a Class A felony burglary if committed by an adult, was fourteen years of age when he committed the act, and has two prior unrelated delinquency adjudications for acts that would be felonies. The juvenile court stated at the dispositional hearing that "commitment to the Department of Correction on both a determinate sentence under Indiana [C]ode 31–37–19–10 and a commitment in general under Indiana [C]ode 31–37–19–6, is what is called for in this situation." Transcript at 49. No reported case addresses the interplay between sections 6 and 10.

Section 6 begins, "[e]xcept as provided in section 10. . . ." D.C. contends the plain language of section 6 therefore precludes a juvenile court from entering a dispositional order with both an indeterminate commitment pursuant to section 6 and a determinate commitment pursuant to section 10. We agree.

■ Section 6 clearly contemplates a dispositional order that includes elements found in both sections 5 and 6 when it states a juvenile court may enter any order specified in section 5 [2] *and* take any of the actions specified in section 6. *See R.J.G. v. State*, 902 N.E.2d 804, 806 (Ind. 2009) (noting, in holding juvenile court could order both commitment to the DOC and subsequent probation, that the "menu of dispositional options" is found in sections 5 and 6 which "allow a juvenile court to order at 'least one,' i.e. potentially multiple, dispositions"). Section 6 does not similarly reference the action described in sec-

2. A determinate sentence pursuant to section 10 is not one of the options under section 5. However, a determinate sentence pursuant to Indiana Code section 31–37–19–9 *is* one of the options under section 5. Moreover, section 9 provides that after a juvenile court determines a juvenile offender is a sex or violent offender pursuant to Indiana Code section 11–8–8–5 and if the juvenile meets certain requirements (being between thirteen and sixteen and having committed one of the enumerated offenses), "the juvenile court may, *in addition to an order under section 6 of this chapter* ... order wardship of the child to the [DOC] for a fixed period that is not longer than the date the child becomes eighteen (18) years of age. . . ." Ind.Code § 31–37–19–9(b) (emphasis added). The DOC may not reduce the period ordered by the juvenile court under this section. Ind.Code § 31–37–19–9(c). The inclusion of the "in addition to" language in section 9 referencing section 6 further bolsters our conclusion that section 10, not having similar language, is an exclusive penalty.

tion 10 as an *additional* option, but rather, by stating "[e]xcept as provided in section 10," references section 10 as an *alternative* option.[3] The unambiguous language of the statute can only be interpreted to mean any or all of the dispositional alternatives in sections 5 and 6 are available to the juvenile court unless the juvenile fits within the parameters of section 10, in which case section 10 exclusively describes the available penalty. *Cf. In re M.W.*, 913 N.E.2d at 787 (construing statute stating "[e]xcept as provided under section 2.5 of this chapter, the department [of child services] is not responsible for payment of any costs of secure detention" to unambiguously mean the department is not obligated to pay costs *unless* the provisions of section 2.5 are satisfied).

■ The State argues the legislature intended to give the juvenile court the ability to impose up to a two-year period of commitment that could not be reduced by the DOC in its normal course and also allow the DOC to retain the most serious juvenile offenders beyond those two years if it is deemed necessary. We tend to agree the statutes as written do not seem to serve their intended purpose. Section 10 is clearly directed at the most serious juvenile offenders. In *W.T.J. v. State*, 713 N.E.2d 938 (Ind.Ct.App.1999), we agreed with the juvenile offender's assertion that the determinate sentencing statute "is an expression of legislative intent to permit the juvenile a reasonable opportunity to reform through less severe dispositional alternatives before a more severe penalty

may be imposed." *Id.* at 942. However, if the purpose of section 10 is to impose a more severe penalty on those with more serious juvenile records, making the determinate commitment an exclusive penalty and further limiting the juvenile court to imposing a maximum two-year commitment, rather than permitting additional remedies at the conclusion of the determinate commitment and/or making the two-year limitation a minimum instead of a maximum, does not necessarily serve that purpose. For instance, a fourteen-year old who committed an act that would be burglary as a Class A felony if he was an adult, as D.C. did, but who has no (or only one) prior adjudications for an act that would be a felony if committed by an adult, unlike D.C., could be committed under section 6 to the wardship of DOC until he turned eighteen years of age—or up to four years—and if released earlier, could be continued on probation or subject to other conditions on his release, whereas a juvenile who committed the same act but had two prior felony adjudications and was committed to the DOC under section 10 could only be committed for a maximum of two years.[4] We acknowledge a juvenile committed under section 6 could also be released in less than two years and therefore ultimately receive a lesser penalty than a juvenile sentenced under section 10. However, at their extremes, sections 6 and 10 when applied separately produce results antithetical to the purpose of the statutes.[5] Nonetheless, because the plain language of

---

**3.** "Except" is defined as "with the exclusion or exception of." *www.merriam-webster.com/dictionary/except* (last visited September 20, 2010).

**4.** If section 10, rather than restricting the juvenile court to imposing a determinate sentence of "not *more* than two years," instead authorized the juvenile court to impose a determinate sentence of not *less* than two years,

the language would be more consistent with the purpose of that section, especially when considered in conjunction with the provision providing the DOC cannot reduce the term imposed by the juvenile court.

**5.** By contrast, the interplay of sections 5, 6, and 9 and the language used to link those sections together, avoids this result.

the statutes is unambiguous in making sections 6 and 10 mutually exclusive, we cannot look to legislative intent and construe the statutes to effect that intent.

The juvenile court erred by imposing both an indeterminate commitment under section 6 and a determinate commitment under section 10. Section 6 is applicable "[e]xcept as provided in section 10...." Because section 10 is applicable to D.C., he is subject to a determinate commitment of up to two years in an authorized facility. We therefore reverse that part of the trial court's dispositional order imposing commitments pursuant to both sections 6 and 10 and remand for the trial court to issue a new dispositional order imposing only a determinate commitment under section 10.

### Conclusion

The juvenile court did not abuse its discretion by ordering D.C. committed to the DOC rather than a less restrictive available alternative. However, the juvenile court did err by ordering both a determinate and an indeterminate commitment, and the dispositional order is therefore reversed and this cause remanded for additional proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

MAY, J., and VAIDIK, J., concur.

J.B., Appellant–Respondent,