ATTORNEY FOR APPELLANT
Patricia Caress McMath
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

In the

Indiana Supreme Court

No. 49S02-1102-JV-116

D.C.,

                                        *Appellant (Defendant below),*

v.

STATE OF INDIANA,

                                        *Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49D09-0908-JD-002572
The Honorable Marilyn Moores, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1002-JV-100

**November 17, 2011**

**David, Justice.**

At a dispositional hearing, the juvenile court imposed on the delinquent child a determinate commitment of two years at the Department of Correction to be followed by an indeterminate commitment. We hold that the determinate and indeterminate commitment statutes in question are unambiguously mutually exclusive, and thus the trial court could impose only one of the commitments on the delinquent child. We reverse the trial court's dispositional order and remand to the trial court to decide, in its discretion, which type of commitment is appropriate.

**Facts and Procedural History**

In August 2009, when he was fourteen years old, D.C. and three other boys broke into the home of an eighty-nine-year-old woman. They ransacked the home in search of valuables; and they attacked, struck, and injured the homeowner.

Several days after the incident, the State filed a petition, alleging that D.C. was a delinquent child. The State alleged D.C. had committed acts that, if committed by an adult, would have constituted Class A felony burglary, Class B felony attempted robbery, and Class C felony battery.

The State initially sought to try D.C. as an adult. Pursuant to an admission agreement,[1] the State agreed not to seek waiver into adult court; D.C. was adjudicated delinquent for an act that would be Class A felony burglary if committed by an adult; the State dropped the remaining two charges; and disposition was left to the juvenile court.

In November 2009, the juvenile court held a dispositional hearing. Using two different dispositional statutes, the juvenile court imposed on D.C. a determinate commitment of two years at the Department of Correction ("DOC") to be followed by an indeterminate commitment "until the age of 21 unless sooner released by" the DOC.

D.C. filed a motion to correct errors, requesting the juvenile court to amend the dispositional order. Rejecting D.C.'s argument that the juvenile court could not impose both the determinate and indeterminate commitments, the juvenile court denied the motion.

---

[1] The record reflects that D.C. signed a "plea agreement." However, in juvenile court proceedings, juveniles do not plead guilty or not guilty but rather admit or deny allegations. Use of a document titled "plea agreement" should yield in favor of use of a document titled "admission agreement" or something similar. See Ind. Code § 31-37-12-8 (2008) (using term "admission of allegations by child"). If the child admits to committing an offense or if the trial court finds that the child has committed an offense, the next step is a dispositional hearing and not sentencing. This reflects the different purposes that underlie the juvenile courts and adult criminal courts. See J.C.C. v. State, 897 N.E.2d 931, 935 (Ind. 2008) (stating that "the statutory scheme for dealing with minors who commit crimes is vastly different from the statutory scheme directed to adults who commit crimes"); In re K.G., 808 N.E.2d 631, 637 (Ind. 2004) (noting that the Indiana Code is "replete with distinctions between criminal matters and matters concerning alleged delinquents").

D.C. then appealed the dispositional order, arguing that (1) the juvenile court abused its discretion in committing him to the DOC when a less restrictive placement was available and (2) the juvenile court incorrectly ordered both a determinate two-year commitment and indeterminate commitment. The Court of Appeals rejected D.C.'s first argument but agreed with the second argument, finding that the dispositional statutes in question were mutually exclusive. D.C. v. State, 935 N.E.2d 290 (Ind. Ct. App. 2010). Accordingly, the Court of Appeals reversed in part and remanded with instructions that the juvenile court impose a determinate commitment only. Id. at 296.

We granted transfer to interpret various dispositional statutes within the juvenile code. We summarily affirm the decision of the Court of Appeals that the juvenile court did not abuse its discretion in committing D.C. to the DOC even though a less restrictive placement at another facility may have been available. Ind. Appellate Rule 58(A)(2).

## Standard of Review

We review a matter of statutory interpretation de novo, as it presents a pure question of law. Gardiner v. State, 928 N.E.2d 194, 196 (Ind. 2010).

## Juvenile Code Dispositional Alternatives

The juvenile code lists dispositional alternatives that the trial court can impose on a delinquent child, depending on the circumstances of the case. See Ind. Code §§ 31-37-19-1 to -28 (2008 & Supp. 2011). Relevant to this case is the interplay between a few of those alternatives, and an overview of those provisions is in order before we examine them in more detail.

Indiana Code section 31-37-19-6 (2008)[2] ("section 6") provides for, among other things, an indeterminate commitment of a delinquent child. One option for the trial court under section

---

[2] Indiana Code section 31-37-19-6 states in full as follows:

> Sec. 6. (a) This section applies if a child is a delinquent child under IC 31-37-1.
> (b) Except as provided in section 10 of this chapter and subject to section 6.5 of this chapter, the juvenile court may:
>     (1) enter any dispositional decree specified in section 5 of this chapter; and
>     (2) take any of the following actions:
>         (A) Award wardship to:

6 is to award wardship of the child to the DOC. In that case, the DOC determines both the placement of the juvenile and the duration of the placement. See Matter of Tina T., 579 N.E.2d 48, 61 (Ind. 1991). Indiana Code section 31-37-19-5[3] ("section 5") lists a "menu of dispositional

> (i) the department of correction for housing in a correctional facility for children; or
> (ii) a community based correctional facility for children.
> Wardship under this subdivision does not include the right to consent to the child's adoption.
> (B) If the child is less than seventeen (17) years of age, order confinement in a juvenile detention facility for not more than the lesser of:
> > (i) ninety (90) days; or
> > (ii) the maximum term of imprisonment that could have been imposed on the child if the child had been convicted as an adult offender for the act that the child committed under IC 31-37-1 (or IC 31-6-4-1(b)(1) before its repeal).
> (C) If the child is at least seventeen (17) years of age, order confinement in a juvenile detention facility for not more than the lesser of:
> > (i) one hundred twenty (120) days; or
> > (ii) the maximum term of imprisonment that could have been imposed on the child if the child had been convicted as an adult offender for the act that the child committed under IC 31-37-1 (or IC 31-6-4-1(b)(1) before its repeal).
> (D) Remove the child from the child's home and place the child in another home or shelter care facility. Placement under this subdivision includes authorization to control and discipline the child.
> (E) Award wardship to a:
> > (i) person, other than the department; or
> > (ii) shelter care facility.
> Wardship under this subdivision does not include the right to consent to the child's adoption.
> (F) Place the child in a secure private facility for children licensed under the laws of a state. Placement under this subdivision includes authorization to control and discipline the child.
> (G) Order a person who is a respondent in a proceeding under IC 31-37-16 (before its repeal) or IC 34-26-5 to refrain from direct or indirect contact with the child.
> (c) If a dispositional decree under this section:
> > (1) orders or approves removal of a child from the child's home, or awards wardship of the child to a:
> > > (A) person, other than the department; or
> > > (B) shelter care facility; and
> > (2) is the first court order in the delinquent child proceeding that authorizes or approves removal of the child from the child's parent, guardian, or custodian; the juvenile court shall include in the decree the appropriate findings and conclusions described in IC 31-37-6-6(f) and IC 31-37-6-6(g).

[3] Indiana Code section 31-37-19-5 states in full as follows:

Sec. 5. (a) This section applies if a child is a delinquent child under IC 31-37-1.

options" that may be ordered in addition to an order under section 6. R.J.G. v. State, 902 N.E.2d 804, 806 (Ind. 2009). For example, this Court has noted that a juvenile court could order both a commitment to the DOC under section 6 and subsequent probation under section 5. Id. Finally, Indiana Code section 31-37-19-10[4] ("section 10") provides for a determinate commitment of a juvenile for up to two years to the DOC if the juvenile fits certain criteria. Specifically, the section applies to delinquent children who have committed one of the listed felonies in the provision; were at least fourteen years old when committing the felony; and have had two unrelated

(b) The juvenile court may, in addition to an order under section 6 of this chapter, enter at least one (1) of the following dispositional decrees:
> (1) Order supervision of the child by the probation department as a condition of probation under this subdivision. The juvenile court shall after a determination under IC 11-8-8-5 require a child who is adjudicated a delinquent child for an act that would be an offense described in IC 11-8-8-5 if committed by an adult to register with the local law enforcement authority under IC 11-8-8.
> (2) Order the child to receive outpatient treatment:
>> (A) at a social service agency or a psychological, a psychiatric, a medical, or an educational facility; or
>> (B) from an individual practitioner.
> (3) Order the child to surrender the child's driver's license to the court for a specified period of time.
> (4) Order the child to pay restitution if the victim provides reasonable evidence of the victim's loss, which the child may challenge at the dispositional hearing.
> (5) Partially or completely emancipate the child under section 27 of this chapter.
> (6) Order the child to attend an alcohol and drug services program established under IC 12-23-14.
> (7) Order the child to perform community restitution or service for a specified period of time.
> (8) Order wardship of the child as provided in section 9 of this chapter.

[4] Indiana Code section 31-37-19-10 states in full as follows:

Sec. 10. (a) This section applies to a child who:
> (1) is adjudicated a delinquent child for an act that if committed by an adult would be:
>> (A) a felony against a person;
>> (B) a Class A or Class B felony that is a controlled substances offense under IC 35-48-4-1 through IC 35-48-4-5; or
>> (C) burglary as a Class A or Class B felony under IC 35-43-2-1;
> (2) is at least fourteen (14) years of age at the time the child committed the act for which the child is being placed; and
> (3) has two (2) unrelated prior adjudications of delinquency for acts that would be felonies if committed by an adult.
(b) A court may place the child in a facility authorized under this chapter for not more than two (2) years.
(c) Notwithstanding IC 11-10-2-5, the department of correction may not reduce the period ordered under this section (or IC 31-6-4-15.9(n) before its repeal).

prior delinquent offenses that included acts that would be felonies if committed by an adult. Ind. Code § 31-37-19-10(a). Section 10 explicitly states that the DOC cannot reduce the period that the juvenile court orders under the section. Id. § 31-37-19-10(c).

In this case, the juvenile court committed D.C. to the DOC for a determinate period of two years under section 10 and awarded wardship over D.C. to the DOC for an indeterminate term under section 6.[5] Thus, the court ordered a minimum commitment of two years, which the DOC could not reduce, to be followed by wardship to the DOC, who would then possess the authority and discretion to detain D.C. until he turned twenty-one or to release him sooner.

D.C. agrees that he fits the enumerated criteria in section 10. Class A burglary is a listed felony under the provision; D.C. was fourteen when he committed the burglary; and by the time of this incident, D.C.'s prior delinquent offenses included acts that, if committed by an adult, would have constituted one count of Class C felony criminal confinement and two counts of Class D felony auto theft. D.C. also does not dispute the trial court's authority to impose either an indeterminate commitment under section 6 or a determinate commitment under section 10. D.C. rather challenges the court's authority to impose both on him simultaneously, arguing that the plain language of section 6 disallows that action. The State, on the other hand, argues that it is reasonable to interpret the statutes to authorize the juvenile court's dispositional order in this case.

The Court of Appeals agreed with D.C., focusing largely on the opening clause of subsection (b) in section 6. Section 6(b) states in part,

---

[5] The relevant portion of the juvenile court's dispositional order is as follows:

> The Court awards Wardship to the Indiana Department of Correction for housing in any correctional facility for children until the age of 21, unless sooner released by the Department of Corrections [sic], and [D.C.] is detained pending transfer.
> The Court as part of its disposition, orders Pursuant to IC 31-37-19-10, finds that [D.C.] committed an act that would be: burglary as a class A or class B felony and was at least 14 years old at the time the delinquency act was committed and has unrelated prior adjudications of delinquency for acts that would be felonies if committed by an adult.
> The Court Orders:
> [D.C.] be committed to Department of Correction for a determinant [sic] sentence of 24 Months[.] The Court also orders that [D.C.] be committed to the Department of Correction under I.C. 31-37-19-6 and that he remain in the care and custody of the Department of Correction until he has reached the age of twenty-one (21).

6

(b) Except as provided in section 10 of this chapter and subject to section 6.5 of this chapter, the juvenile court may:

(1) enter any dispositional decree specified in section 5 of this chapter; and

(2) take any of the following actions:

(A) Award wardship to:

(i) the department of correction for housing in a correctional facility for children[.]

I.C. § 31-37-19-6(b). The Court of Appeals stated that the "[e]xcept as provided in section 10" language unambiguously precluded the juvenile court from entering both an indeterminate commitment under section 6 and a determinate commitment under section 10. D.C., 935 N.E.2d at 294–96.

The court contrasted section 6's opening clause with its subsequent language specifying that the juvenile court may enter any order specified in section 5 *and* take any of the actions under section 6. Id. at 294–95. The Court of Appeals concluded that the latter language is a provision for "additional option[s]" but that the opening clause references section 10 as an "alternative option." Id. at 295.

To bolster that conclusion, the Court of Appeals discussed a different determinate commitment statute—Indiana Code section 31-37-19-9 ("section 9"). D.C., 935 N.E.2d at 294 n.2. Section 9 is a determinate commitment statute that is applicable to juvenile offenders who are sex or violent offenders and who fit certain other criteria.[6] I.C. § 31-37-19-9. The Court of Ap-

___

[6] Indiana Code section 31-37-19-9 states in full as follows:

Sec. 9. (a) This section applies if a child is a delinquent child under IC 31-37-1.
(b) After a juvenile court makes a determination under IC 11-8-8-5, the juvenile court may, in addition to an order under section 6 of this chapter, and if the child:
(1) is at least thirteen (13) years of age and less than sixteen (16) years of age; and
(2) committed an act that, if committed by an adult, would be:
(A) murder (IC 35-42-1-1);
(B) kidnapping (IC 35-42-3-2);
(C) rape (IC 35-42-4-1);
(D) criminal deviate conduct (IC 35-42-4-2); or
(E) robbery (IC 35-42-5-1) if the robbery was committed while armed with a deadly weapon or if the robbery resulted in bodily injury or serious bodily injury;

peals noted that two different phrases—one in section 5 and one in section 9—explicitly authorize a juvenile court to impose a section 6 indeterminate commitment and section 9 determinate commitment simultaneously.  D.C., 935 N.E.2d at 294 n.2.  On the other hand, similar language authorizing both a section 6 indeterminate commitment and a section 10 determinate commitment does not exist.  Id.

The Court of Appeals first pointed out that a determinate commitment under section 9 is one of the options listed in section 5, which is a statute that lists what a juvenile court can order in addition to a section 6 indeterminate commitment.  Id.  The court noted that section 10, on the other hand, "is not one of the options under section 5."  Id.  Second, the court noted that section 9 states in part that "the juvenile court may, *in addition to an order under section 6 of this chapter* . . . order wardship of the child to the [DOC] for a fixed period that is not longer than the date the child becomes eighteen (18) years of age . . . ."  Id. (alteration and omissions in original) (quoting I.C. § 31-37-19-9(b)).  The Court of Appeals found that section 9's "in addition to" language referencing section 6 supported the conclusion that section 10, lacking similar language, is "an exclusive penalty."  Id.

The Court of Appeals felt bound by the plain language of section 6, but it acknowledged that "the statutes as written do not seem to serve their intended purpose."  Id. at 295.  The court noted that section 10 appears intended to impose a more severe penalty on delinquent children who are being adjudicated for a comparatively serious offense, yet section 10 establishes a two-year determinate commitment as a maximum rather than a minimum term.  Id.  The Court of Appeals further noted that if mutually exclusive from an indeterminate term, application of section 10 could result in a shorter commitment than an indeterminate commitment ordered for less serious offenses and offenders.  Id.  It found these possible results "antithetical to the purpose of the statutes" but stressed that because of the statutes' unambiguous language, it could not look to legislative intent.  Id. at 295–96.

---

order wardship of the child to the department of correction for a fixed period that is not longer than the date the child becomes eighteen (18) years of age, subject to IC 11-10-2-10.

(c) Notwithstanding IC 11-10-2-5, the department of correction may not reduce the period ordered under this section (or IC 31-6-4-15.9(b)(8) before its repeal).

The Court of Appeals held that "any or all of the dispositional alternatives in sections 5 and 6 are available to the juvenile court unless the juvenile fits within the parameters of section 10, in which case section 10 exclusively describes the available penalty." Id. at 295. Accordingly, because D.C. fit under section 10's criteria, the Court of Appeals remanded to the juvenile court with instructions to impose only a determinate commitment of up to two years under section 10. Id. at 296.

Although we agree with the conclusion that sections 6 and 10 are mutually exclusive, we do not agree that the juvenile court had to impose a determinate commitment under section 10 in this case. Rather, we believe that the juvenile court has discretion to choose between the two provisions.

When interpreting a statute, we first decide "whether the legislature has spoken clearly and unambiguously on the point in question." Rheem Mf'g Co. v. Phelps Heating & Air Conditioning, Inc., 746 N.E.2d 941, 947 (Ind. 2001). When a statute is clear and unambiguous, courts do not apply any rules of construction other than giving effect to the plain, ordinary, and usual meaning of the language. Id. Thus, this Court will not examine legislative intent unnecessarily when no ambiguity exists. Sloan v. State, 947 N.E.2d 917, 922 (Ind. 2011).

The State takes issue with the Court of Appeals decision in two respects. The State first argues that "the 'except as provided in' language in section 6 can be interpreted to mean simply that unless the juvenile meets the conditions of section 10, the juvenile court's options for committing the juvenile to an authorized facility are subject to the limitations contained in section 6." The State continues, "[h]owever, where section 10 applies, the court has the additional option of imposing a longer fixed commitment authorized by that section." The State also argues that if a juvenile fits the criteria of section 10, the juvenile court may impose a determinate commitment under section 10 but the court is not obligated to do so.

The State's first argument is not convincing. As the Court of Appeals observed, "'Except' is defined as 'with the exclusion or exception of.'" D.C., 935 N.E.2d at 295 n.3 (citing www.merriam-webster.com/dictionary/except (last visited September 20, 2010)). Thus, section 6(b)'s language—"[e]xcept as provided in section 10 . . . the juvenile court may"—can be rephrased as "the juvenile court may [take any of the following actions] with the exception of the op-

9

tion under section 10." What section 6(b) does *not* say is the following: "Except as provided in section 10 of this chapter . . . the juvenile court may *only* [take any of the following actions]." If it did, then we may agree with the State that section 6 limits the juvenile court's options unless section 10 applies, in which case section 10 is an additional, versus an alternative, option.

Also, if the legislature had not clearly provided that the juvenile court can impose a section 9 determinate commitment with a section 6 indeterminate commitment, while failing to provide similarly for a section 10 determinate commitment, the State's argument may have more merit. But we agree with the Court of Appeals and D.C. that by its plain terms, the "except as provided in section 10" language in section 6 sets forth an exception to the juvenile court's authority to order an indeterminate commitment. That is, if the court exercises its authority under section 10 to order a determinate commitment, it may not order an indeterminate commitment under section 6. Or, in other words, the juvenile court can use section 6 to order an indeterminate commitment unless it proceeds under section 10 to order a determinate commitment.

We do agree, however, with the State's second argument. Section 10(b) provides that the juvenile court "may" issue a determinate commitment of not more than two years. The commitment options in section 6 are likewise permissive. We do not see anything in either provision that mandates a juvenile court to impose a section 10 determinate commitment if the juvenile fits the section 10 criteria. This is consistent with language from this Court's opinion in J.D. v. State, 853 N.E.2d 945, 949 (Ind. 2006): "The juvenile court judge had the authority to decide whether to employ 'determinate sentencing' in the first place; it was one of the juvenile court's 'dispositional alternatives' to proceed under Indiana Code section 31-37-19-10 but the court was not required to utilize this provision." Thus, the Court of Appeals should have remanded the case to the juvenile court for a dispositional order committing D.C. under either section 6 or section 10 instead of instructing the juvenile court to impose only a section 10 determinate commitment.

The State fervently argues that holding sections 6 and 10 mutually exclusive contravenes the purpose of the statutes. In fact, D.C. does not dispute this. We agree with the State that juvenile courts would retain more flexibility in fashioning dispositions for serious, recidivist juvenile offenders who fall under section 10 if a section 10 determinate commitment was an addi-

tional, instead of alternative, option to a section 6 indeterminate commitment. But the language of section 6 is clear and unambiguous, and we accordingly hold that sections 6 and 10 as written are mutually exclusive. We leave it to the legislature to change the statutes, if it deems necessary.

Although juvenile courts must adhere to statutory mandates, this Court has recognized that juvenile court judges operate against a "backdrop of flexibility." N.D.F. v. State, 775 N.E.2d 1085, 1089 (Ind. 2002). We further note that the purpose of the juvenile system is to rehabilitate a child, whenever possible. See J.C.C. v. State, 897 N.E.2d 931, 935 (Ind. 2008) (noting the "overarching rehabilitative thrust of Indiana's juvenile justice system"); see also I.C. § 31-10-2-1(5). Even if this goal of rehabilitation is straightforward, achieving it is often elusive. Juvenile judges are faced with the sometimes almost insurmountable challenge of sorting out conflicting recommendations concerning a child, requiring the judges to balance the needs of a child against the interests of the community. They must consider numerous factors—the importance of family; the protection of society; the benefit of proceeding in an efficient and cost-effective manner; and, of course, the fact that the delinquent is still a child, often with a life that has been anything but childlike. Thus, because there is no statutory language requiring a juvenile court to impose either a section 6 or a section 10 commitment, we hold that the appropriate course of action is to allow the juvenile court, in its discretion, to decide which commitment is appropriate for D.C.

## Conclusion

We reverse the trial court's dispositional order. We remand to the trial court to impose either a section 6 or section 10 commitment.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.

11