

I N  T H E

# Indiana Supreme Court

Supreme Court Case No. 23S-JV-246

## G.W.,

*Appellant (Respondent below)*



FILED

Apr 10 2024, 11:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

–v–

## State of Indiana,

*Appellee (Petitioner below)*

---

Argued: October 31, 2023 | Decided: April 10, 2024

Appeal from the Rush Circuit Court,
No. 70C01-2208-JD-62
The Honorable David E. Northam, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 22A-JV-3076

---

**Opinion by Justice Goff**

Chief Justice Rush and Justices Massa and Molter concur.
Justice Slaughter dissents with separate opinion.

**Goff, Justice.**

A juvenile court must, by statute, accompany its dispositional decree with specific written findings and conclusions on the record. When the juvenile court fails to comply with this statutory mandate, an appellate court is left to speculate over the theory supporting the judge's decision. Such speculation is especially improper when disposition results in the juvenile's confinement in the Department of Corrections. What, then, is the proper appellate remedy for curing a deficient dispositional order?

When a juvenile court fails to enter the requisite findings of fact in its dispositional order, an appellate court should neither affirm nor reverse. Instead, the proper remedy is to remand the case under Indiana Appellate Rule 66(C)(8) while holding the appeal in abeyance. This process adheres to the applicable statutory requirements, preserves the distinct roles played by our trial courts and appellate courts, and (in some cases) justifies the cost of juvenile detention.

Because the juvenile here has been released from confinement, there's no need for us to stay the appellate proceedings. Instead, to dispose of the case, we exercise our discretion under Appellate Rule 1 and remand to the juvenile court for entry of its amended dispositional order.

## Facts and Procedural History

In 2022, the State filed a delinquency petition in which it alleged that G.W., then seventeen years old, had committed acts that would be theft and criminal trespass if committed as an adult and that he had left home without permission from a parent or guardian. App. Vol. 2, p. 34. When G.W. allegedly committed further acts that amounted to theft and criminal trespass if committed as an adult, the State amended its petition to add those allegations. *Id.* at 41, 53. About a month later, the juvenile court accepted G.W.'s admission to one allegation of theft and one allegation of criminal trespass. *Id.* at 58–60. Not long after that, G.W. went missing, apparently having fled the state with his adult sister. *Id.* at 73. Authorities eventually located him in Mississippi and returned him to Indiana to await his dispositional hearing. *Id.* at 61, 77. At that hearing, G.W. testified

that he was "lost" and "need[ed] guidance," that he had left the state to find work, and to "prove that [he] could do things on [his] own." Tr. Vol. 2, pp. 34–35.

The court, having considered the predispositional report, rejected G.W.'s request for home detention. The court instead ordered wardship of G.W. to the Department of Correction (or DOC), observing that he had "been involved in criminal activity" for "most of [his] teenage life" and that it was the court's "last chance to do something for" him. *Id.* at 43–45. However, the court's dispositional order included no specific findings to support G.W.'s commitment, as required by statute. Instead, the order contained a generic list of things the court "reviewed and considered," including the "statements, evidence and recommendations offered by the parties"; the "best interests of the child and the child's community"; and the "various alternatives available for the care, treatment and rehabilitation of this child." App. Vol. 2, p. 80.

The Court of Appeals affirmed in an unpublished memorandum decision. *G.W. v. State*, No. 22A-JV-3076, 2023 WL 3476513, at *3 (Ind. Ct. App. May 16, 2023). "Based upon the record," and considering "G.W.'s delinquent behavior and failure to adequately respond to prior attempts at rehabilitation," the panel found no abuse of discretion by the juvenile court in committing G.W. to the DOC. *Id.* Acknowledging, however, the order's failure to comply with the applicable statutory requirements, the panel remanded "for an amended dispositional order which includes the written findings and conclusions required by the statute." *Id.*

After the Court of Appeals had delivered its decision, but before it had certified that decision, the juvenile court issued an amended dispositional order which included the required statutory findings. State's Ex. C.

G.W. petitioned for transfer, which we granted, thus vacating the Court of Appeals' decision. *See* Ind. Appellate Rule 58(A).

# Standard of Review

An abuse-of-discretion standard of review applies to a juvenile court's disposition of a delinquent child. *K.S. v. State*, 114 N.E.3d 849, 854 (Ind. Ct. App. 2018). A court abuses its discretion by misinterpreting the law or "if its decision clearly contravenes the logic and effect of the facts and circumstances before it." *T.D. v. State*, 219 N.E.3d 719, 724 (Ind. 2023).

# Discussion and Decision

Our decision today consists of two parts: In Part I, we consider the issue of justiciability—namely, whether G.W.'s release from the DOC renders this case moot. Concluding that the public-interest exception applies to this otherwise moot case, we proceed to the substantive issue before us, deciding on the proper appellate remedy for curing a deficient dispositional order.

## I. Our "public interest" exception to mootness allows us to offer guidance on an issue likely to recur.

On July 10, 2023, G.W. "completed his obligation to the State," resulting in his discharge from the DOC without supervision. State's Ex. A. On October 17, after this Court granted G.W.'s petition for transfer, the State moved to dismiss the appeal as moot, arguing that G.W. had "obtained the relief he requested," leaving "no further relief for this Court to grant." Mot. to Dismiss at 2.

We agree with the State that G.W.'s release from confinement renders this case moot. Indeed, the "long-standing rule in Indiana courts" holds that a case is "moot when no effective relief can be rendered to the parties before the court." *T.W. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 121 N.E.3d 1039, 1042 (Ind. 2019) (quoting *Matter of Lawrance*, 579 N.E.2d 32, 37 (Ind. 1991)). But Indiana also recognizes a public-interest exception to the mootness doctrine. *Id.* A party may invoke—and a court may apply— this exception when the litigated issue involves a "question of great public

importance which is likely to recur." *Matter of Tina T.*, 579 N.E.2d 48, 54 (Ind. 1991). We're presented with such an issue here.

To begin with, we've long recognized the "paramount public importance" of "the procedures implemented to determine the fates of juvenile wards under the protection of the agencies of this State and the conditions under which they are cared for." *Id.* Indeed, juvenile confinement, like any temporary civil commitment, has a "very significant impact on the individual" and "constitutes a significant deprivation of liberty that requires due process protection." *See E.F. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 188 N.E.3d 464, 467 (Ind. 2022) (internal quotation marks and citation omitted). Given "the fundamental interests at stake in these cases," and the need to balance those interests against the "safety of individuals and the public," appellate "review of the issues presented is important, including the nuances of the sufficiency of the evidence to support a commitment." *Id.* at 465, 467.

Second, we find the issue here likely to recur. The average age of a juvenile at intake into a correctional facility is sixteen years. Ind. Dep't of Correction, Annual Report: Changing Lives 18 (2021). Many of these offenders may be committed for up to two years. *See* Ind. Code § 31-37-19-10. But the average length of a juvenile's stay is just over eight months for "serious" offenses and just over four months for those deemed to have committed a "minor" offense. Ind. Dep't of Correction, Fact Card (July 1, 2023), http://tinyurl.com/5e73wjpf. The length of time that passes between commitment and a decision on appeal can often take just as long or longer. In this case, for example, the Court of Appeals issued its decision more than five and a half months after the juvenile court committed G.W. to the DOC. *Cf. Matter of Tina T.*, 579 N.E.2d at 53–54 (addressing an otherwise moot claim given the brevity of a juvenile's interim placement pending a committee's review and recommendation).

Finally, while appellate courts need not resolve every moot case involving juvenile commitments, we "readily do so to address novel issues or close calls, or to build the instructive body of law to help trial courts make these urgent and difficult decisions." *E.F.*, 188 N.E.3d at 466. And, here, we're presented with a novel issue. As G.W. points out, this

Court has never been asked to determine the appropriate remedy when a "juvenile court has failed to make the statutorily required findings." Resp. to Mot. to Dismiss at 4. We do so today.

## II. What's the proper appellate remedy for curing a deficient dispositional order?

By statute, a "juvenile court **shall** accompany [its] dispositional decree with written findings and conclusions upon the record," whether in approving, modifying, or rejecting the "dispositional recommendations submitted in the predispositional report." I.C. § 31-37-18-9(a) (the Disposition Statute) (emphasis added). Specific findings include, among other things, (1) the care, treatment, rehabilitation, or placement needs of the child; (2) the need for participation by the parent, guardian, or custodian in the plan of care for the child; (3) any services provided to the child; and (4) the "court's reasons for the disposition." *Id.*

There's no dispute that the juvenile court here neglected to include these findings in its dispositional order. Rather, the parties' arguments center on the proper appellate remedy for curing that error.

G.W. initially argued that **reversal** and remand for further proceedings were necessary, "not affirmance with remand to fill in the gaps," as the Court of Appeals concluded. Pet. to Trans. at 8. At oral argument, G.W. shifted course, opposing affirmance but acknowledging that "reversal may not be the appropriate remedy." OA at 2:01–2:07. Instead, G.W. proposes remand under Appellate Rule 66(C)(8) for the entry of findings under Indiana Trial Rule 52(B). This avenue of relief, G.W. stresses, would permit the juvenile court to "decide either to amend the order" or to "change course based upon any changed circumstances that have occurred since the issuance of the insufficient order." Pet. to Trans. at 10; *see also* OA at 6:37–7:04 (raising similar points). While amenable to this procedure, the State raises concerns over "the stability of the juvenile's placement" pending remand. OA at 17:11–17:16.

With these arguments and concerns in mind, we proceed with guidance to appellate courts for resolving cases like this one.

## A. An appellate court should stay the proceedings—and maintain the juvenile's placement—pending remand for the requisite findings.

When a juvenile court fails to enter the requisite findings of fact in its dispositional order, an appellate court should neither affirm nor reverse. Instead, the proper remedy is to remand the case under Appellate Rule 66(C)(8) while holding the appeal in abeyance. *See Salk v. Weinraub*, 271 Ind. 115, 121, 390 N.E.2d 995, 999 (1979). Appellate Rule 66(C)(8) expressly permits a reviewing court to issue an order directing the trial court to enter findings or to modify a judgment under Trial Rule 52(B). Trial Rule 52(B), in turn, applies when (among other circumstances) the required "special findings of fact" by the trial court "are lacking, incomplete," or otherwise "inadequate in form or content."[1] T.R. 52(B)(2).

Pending remand, and unless the DOC deems otherwise,[2] the appellate court should maintain the juvenile's placement in the DOC to avoid disruption of rehabilitation and to ensure the safety of others. To limit potential harm to the juvenile from the delay in proceedings, the appellate court should instruct the juvenile court to issue its findings promptly— typically within 30 days. *See Salk*, 271 Ind. at 122, 390 N.E.2d at 999 (setting forth a similar timeframe); *cf. Smith v. State*, 558 N.E.2d 841, 844 (Ind. Ct. App. 1990) (finding harmless a delay after remand to trial court for specific statement of reasons supporting sentence where defendant made no objection to hearing set 34 days later). Upon entry of those findings, the clerk of the juvenile court must certify them to the clerk of the appellate

---

[1] We acknowledge, as G.W. points out, that "no appellate case has construed [Trial Rule] 52 in the context of findings under [Indiana Code section] 31-37-18-9." Pet. to Trans. at 11–12. However, the Indiana Rules of Court as a whole "apply to all criminal proceedings" to the extent they don't conflict with our criminal rules, Ind. Crim. R. 1.1 (2024), and the "procedures governing criminal trials apply in all matters not covered by the juvenile law," I.C. § 31-32-1-1.

[2] When granted wardship by the court, "the DOC determines both the placement of the juvenile and the duration of the placement." *D.C. v. State*, 958 N.E.2d 757, 759 (Ind. 2011). *See also* I.C. § 11-13-6-4 (vesting authority in the DOC to discharge the juvenile from commitment at any time).

court for inclusion in the record. *See Salk*, 271 Ind. at 122, 390 N.E.2d at 999.

During this time, "the appellate court retains jurisdiction to see that its instructions are carried out." *Skendzel v. Marshall*, 263 Ind. 337, 339, 330 N.E.2d 747, 749 (1975); *see also Stepp v. Duffy*, 686 N.E.2d 148, 152 (Ind. Ct. App. 1997) (a trial court exercises only limited jurisdiction to carry out "what it was requested to do by the appellate court"). If the juvenile court fails to comply with the order on remand, whether intentionally or by mistake, the juvenile "may promptly seek a writ of mandate from the Court issuing the order to enforce compliance with its terms." *Skendzel*, 263 Ind. at 339, 330 N.E.2d at 749.

This process, we believe, serves several important purposes.

To begin with, the juvenile court must enter a dispositional decree that reflects "the least restrictive (most family like) and most appropriate setting available" and that "imposes the least restraint on the freedom of the child." I.C. § 31-37-18-6. While commitment to the DOC "should be treated as a last resort," *C.H. v. State*, 201 N.E.3d 202, 205 (Ind. Ct. App. 2022), that option may be appropriate when "consistent with the safety of the community and the best interest of the child," I.C. § 31-37-18-6. To properly balance these interests, the juvenile court must "carefully follow the language and logic" of the Disposition Statute. *See In re N.E.*, 919 N.E.2d 102, 108 (Ind. 2010) (internal citation omitted). And the reviewing court must be able to say—conclusively—that the juvenile court considered the factors it was required to consider.

Second, remand (rather than affirmance) preserves the distinct roles played by our trial courts and appellate courts. Indeed, we generally agree with G.W. that an "appellate court should not be in the business of making findings." OA at 7:49–7:51. That task falls squarely within the trial judge's capabilities, given his or her familiarity with the child and the circumstances of the case. When clearly articulated, findings made under the Disposition Statute "provide the parties and reviewing courts with the theory upon which the judge decided the case so that the right of review for error might be effectively preserved." *See Shafer v. Lambie*, 667 N.E.2d 226, 232 (Ind. Ct. App. 1996). Without such findings, an appellate court is

left to speculate over what the trial judge was thinking. *Cf.* T.R. 52(D) (a trial court's failure to make required findings "shall not be resolved by any presumption"). Such speculation is especially improper when, like here, disposition results in the juvenile's confinement.

Finally, a juvenile court's findings may be necessary to justify the cost of DOC placement.[3] Upon a finding of delinquency, the juvenile court must order a probation officer to prepare a predispositional report with recommendations for the child's care, treatment, rehabilitation, or placement. I.C. § 31-37-17-1(a)(2). If the Department of Child Services (or DCS) is responsible for paying the cost of the recommended placement or service,[4] that agency is entitled to review and either concur with the report's recommendations or offer an alternative proposal. I.C. § 31-37-17-1.4. The report submitted to the juvenile court must include a statement of DCS's concurrence or DCS's alternative proposal. I.C. § 31-37-17-1(a)(4). The Disposition Statute, in turn, requires the juvenile court to accompany its "dispositional decree with written findings and conclusions upon the record concerning approval, modification, or rejection" of the report's recommendations. I.C. § 31-37-18-9(a). And if it disagrees with the report and with any alternative recommendations made by DCS, the court must accompany its decree with written findings explaining why those recommendations are "unreasonable" or "contrary to the welfare and best interests of the child." I.C. § 31-37-18-9(b)(1). The court must also preserve a complete record of "all documents referenced in the report" should DCS exercise its right to appeal the dispositional decree. I.C. § 31-37-18-9(b)(2). If DCS prevails on appeal, the agency is **not** responsible for any costs and

---

[3] The economic implications of our juvenile-justice system are significant. In 2021, the maintenance of juvenile facilities throughout the state cost Hoosier taxpayers nearly $37 million. Ind. Dep't of Correction, Annual Report: Changing Lives 19 (2021). And that figure reflected an increase of nearly $780,000 from the previous fiscal year. *See* Ind. Dep't of Correction, Annual Report: Moving Forward 30 (2020).

[4] Generally, DCS is responsible for paying the costs of "services provided by or through" DCS for any child. I.C. § 31-40-1-2(a). These "services" include "education, provision of necessary clothing and supplies, medical and dental care, counseling and remediation, or any other services or programs included in a dispositional decree or case plan ordered or approved by the juvenile court for the benefit of a delinquent child." I.C. § 31-40-1-1.5(c).

expenses incurred for the juvenile's "out-of-home placement" pending the appeal, unless the juvenile court "made written findings that the placement is an emergency required to protect the health and welfare of the child." I.C. § 31-37-18-9(e).

In short, the procedure set forth above ensures compliance with the logic of our juvenile code, preserves the distinct roles played by our trial courts and appellate courts, and (in some cases) justifies the cost of juvenile detention.

Our final task is to dispose of the case before us.

### B. To resolve this case, we deviate from our jurisdictional rules and remand to the juvenile court for entry of its amended dispositional order.

Under our Rules of Appellate Procedure, an appellate court "acquires jurisdiction on the date the Notice of Completion of Clerk's Record is noted in the Chronological Case Summary." App. R. 8. The trial court, in turn, **loses** its jurisdiction over the case, and any judgment it renders at that point is void. *Jernigan v. State*, 894 N.E.2d 1044, 1046 (Ind. Ct. App. 2008). This jurisdictional rule enables the "efficient presentation and disposition of the appeal" and prevents "simultaneous review" of a judgment by two courts. *Id.*

Here, the juvenile court noted the Notice of Completion of Clerk's Record on December 28, 2022, thus vesting jurisdiction in the Court of Appeals (and divesting the juvenile court of its jurisdiction). *See id.* On May 16, 2023, the Court of Appeals issued its memorandum decision. The following month—on June 27, 2023—the juvenile court issued its amended dispositional order in an effort to comply with the Disposition Statute. State's Ex. C, p. 3. The Court of Appeals, however, had not yet certified its decision, so the juvenile court **still** lacked jurisdiction. *See* App. R. 65(E) (prohibiting a trial court from taking "any action in reliance upon the opinion or memorandum decision" of an appellate court until after certification of that opinion or memorandum decision).

Arguably, the juvenile court retained the authority to correct the record after jurisdiction had vested in the Court of Appeals. *See Clark v. State*, 727 N.E.2d 18, 21 (Ind. Ct. App. 2000) (setting forth limited circumstances in which the trial court retains jurisdiction after perfection of an appeal). But the amended dispositional order "was not merely a matter of correction of a scrivener's error, nor was it independent of the matters presented" in the appeal. *See Crider v. Crider*, 15 N.E.3d 1042, 1065 (Ind. Ct. App. 2014). Rather, the modified order directly implicated the issue raised on appeal—whether the juvenile court abused its discretion by committing G.W. to the DOC. Such action runs contrary to the policy underlying the jurisdictional rule—enabling the efficient presentation and disposition of the appeal and preventing the simultaneous review of a judgment by two courts.[5] *See Jernigan*, 894 N.E.2d at 1046.

In short, the juvenile court acted prematurely, rendering its amended dispositional order void under our appellate rules. However, those same rules "permit deviation" from their strict application. App. R. 1. Given G.W.'s acknowledgment—and the State's agreement—that the amended dispositional order would suffice to resolve the case before us, *see* OA at 12:20–12:35, 22:55–23:02, we exercise our discretion under Appellate Rule 1 and remand to the juvenile court for entry of that order, without holding this appeal in abeyance.

## Conclusion

For the reasons above, we remand this case to the juvenile court for entry of its amended dispositional order.

---

[5] After a child becomes a ward of the DOC, the juvenile court may, on its own motion, reacquire jurisdiction to modify its original dispositional decree, but **only** after receiving notice from the DOC of the child's pending release from custody and within 30 days of receiving that notice. I.C. § 31-30-2-3. Here, even if the juvenile court retained its jurisdictional authority while the case was pending appeal, there's nothing in the record to suggest that the amended dispositional order was in response to a notice from the DOC of G.W.'s pending release.

Rush, C.J., and Massa and Molter, JJ., concur.
Slaughter, J., dissents with separate opinion.

ATTORNEY FOR APPELLANT
Joel C. Wieneke
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Attorney General of Indiana

Andrew A. Kobe
Section Chief, Criminal Appeals
Office of the Indiana Attorney General
Indianapolis, Indiana

**Slaughter, J., dissenting.**

I respectfully dissent from the Court's opinion for two reasons.

A

First, the Court rightly observes this case is moot, but it nevertheless decides the case's merits under our public-interest exception to the mootness doctrine. Under our judge-made exception, we empower ourselves to adjudicate an otherwise moot case if the legal question is important and likely to recur. As I have explained previously, our mootness exception cannot be squared with our state constitution's structural limits on judicial power, properly understood. See *Seo v. State*, 148 N.E.3d 952, 968–71 (Ind. 2020) (Slaughter, J., dissenting). These limits, reflected in our constitution's separation-of-powers provision, Ind. Const. art. 3, § 1, mean that we are confined to deciding "actual disputes between adverse parties by issuing binding decrees that pronounce the parties' rights and responsibilities and afford meaningful relief to the prevailing party." *Seo*, 148 N.E.3d at 969. The only mootness standard consistent with separation of powers requires "an actual, ongoing controversy between adverse parties." *Id*. at 970. After all, "judges are not counselors or academics; they are not free to take up hypothetical questions that pique a party's curiosity or their own." *Fed. Bureau of Investigation v. Fikre*, 144 S. Ct. 771, 777 (2024).

Today's judgment exceeds the judicial power because it provides G.W. with no meaningful relief. After the court of appeals affirmed the trial court's judgment, the department of correction released G.W. without supervision. G.W. thus "manage[d] to secure outside of litigation all the relief he might have won in it." *Ibid*. Because he is no longer in the department's custody, our award of relief is pointless and our opinion purely advisory—the antithesis of an actual case or controversy implicitly required by article 3, section 1. See *Pence v. State*, 652 N.E.2d 486, 488 (Ind. 1995) (observing that "our explicit separation of powers clause fulfills a similar function" to article III of the federal constitution). To avoid dismissal in our Court, G.W. needed to show that an actual controversy remains despite his release from the department of correction, but he failed to do so on this record. He did not show that he faces specific

adverse consequences in the future due to his commitment to the department.

B

Second, on the merits, I disagree that the trial judge's legal error demands our review at all, much less does it warrant the relief the Court prescribes today. Yes, the judge erred by ignoring the governing statute. By its terms, the statute says a juvenile court "shall accompany [its] dispositional decree with written findings and conclusions". Ind. Code § 31-37-18-9(a). Yet, despite this requirement, the court made no such findings and conclusions. Thus, its omission amounts to error.

But that does not end our inquiry. Not all errors are prejudicial and thus reversible. If the error is harmless, the judgment below stands despite the error. The Court holds, though, that any violations of this statute will necessarily require remanding to the trial court and "holding the appeal in abeyance", rather than allowing an appellate panel to resolve the merits of a juvenile's placement. *Ante*, at 7. This conclusion goes too far. Requiring an automatic remand in these circumstances strikes me as busywork. It prevents an appellate court from reviewing the trial record independently to determine whether the juvenile court abused its discretion in placing a juvenile with the department of correction. Here, given G.W.'s extensive history of delinquent behavior and his failure to respond to prior attempts at rehabilitation, the appellate court was entitled to affirm the juvenile court's judgment.

Unlike the panel below, some appellate panels have opted not to scour the record for evidence that either confirms or refutes a juvenile court's judgment. E.g., *X.D. v. State*, No. 19A-JV-896, at *10–11 (Ind. Ct. App. Sept. 30, 2019) (mem.); *D.R. v. State*, No. 84A05-0804-JV-233, 2008 WL 4408269, at *1 (Ind. Ct. App. Sept. 30, 2008) (mem.). That, of course, is a panel's prerogative. Without deciding the merits, a panel can simply remand with instructions directing the juvenile court to make the findings and conclusions the statute demands. One reason for requiring such detail and specificity is to facilitate appellate review. As the Seventh Circuit observed in a different context, "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

Busy appellate judges can insist that juvenile courts do what the statute requires of them. But if an appellate panel opts to do the juvenile court's legwork for it, I would not hold that the panel's undertaking is necessarily inadequate.

*   *   *

I have serious concerns with the Court's resolution of the merits. But because this case is moot, I would grant the State's motion to dismiss and not reach the merits.