ATTORNEY FOR APPELLANT
Ruth Johnson
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

In the

# Indiana Supreme Court

No. 49S04-0508-JV-356

J.D.,

*Appellant (Respondent below)*,

v.

STATE OF INDIANA,

*Appellee (Petitioner below)*.

Appeal from the Marion County Superior Court, Juvenile Division, Room 1,
No. 49D09-0406-JD-003077
The Honorable James W. Payne, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A04-0410-JV-528

**September 12, 2006**

**Sullivan, Justice.**

In this delinquency case, J.D. was sentenced to a fixed term of one year. He seeks credit against that one-year term for the 35 days he was confined prior to sentencing. We hold that requiring credit for the time a juvenile has spent in pre-disposition confinement would impermissibly impinge upon the juvenile court's broad authority to fashion dispositional alternatives.

## Background

Fifteen-year-old J.D. was arrested and alleged to be a delinquent child for committing acts that, if committed by an adult, would constitute burglary, theft, and resisting law enforcement. He already had two unrelated prior adjudications of delinquency for acts that would have been felonies if committed by an adult. He was confined in the county juvenile detention center. Thirty-five days later, all of which J.D. spent in confinement, he admitted to the act that would constitute burglary. In return, the State dismissed the remainder of the allegations.

As recommended by the State, the trial court concluded J.D. was eligible to be sentenced under Indiana Code section 31-37-19-10 (described in footnote 3 below) and ordered J.D. to serve a one-year determinate sentence. J.D. then requested time-served credit for the 35 days he was detained prior to sentencing. The trial court denied J.D.'s request, and the Court of Appeals affirmed. J. D. v. State, 826 N.E.2d 146 (Ind. Ct. App. 2005). We granted transfer. 841 N.E.2d 181 (Ind. 2005).

## Discussion

When a child under the age of 18 is alleged to have committed an act that would constitute a crime if committed by an adult, the General Assembly has mandated that the child's case proceed in accordance with law and procedures that we refer to in this opinion as the "Juvenile Code." While the Juvenile Code has a vocabulary all its own and is distinct in many other respects from the law and procedures applicable to adults charged with crimes, it nevertheless intersects at various points with criminal statutes applicable to adults. From time to time, a case arises at one of those points of intersection. For example, several years ago we were presented with a case that required us to evaluate whether certain language in the Juvenile Code dealing with repeat offenders should be interpreted in the same way as similar language that appeared in criminal statutes applicable to adults. See N.D.F. v. State, 775 N.E.2d 1085, 1089 (Ind. 2002) (holding that the law interpreting habitual offender provisions in the adult criminal statutes did not govern interpretation of similar language in the Juvenile Code).

The case before us today also arises at a point of intersection between the Juvenile Code and criminal statutes applicable to adults. It asks whether certain language that appears in criminal statutes applicable to adults concerning credit time for pre-trial confinement also applies to juvenile offenders.

J.D.'s argument is a relatively straightforward syllogism:

1. A criminal statute applicable to adults, Indiana Code section 35-50-6-3, provides that a person imprisoned for a crime is entitled to credit time for each day the person was confined awaiting trial or sentencing.

2. There are no references in the Juvenile Code to credit time and a provision in the Juvenile Code, Indiana Code section 31-32-1-1, specifies that in juvenile delinquency cases, the "procedures governing adult criminal trials" apply in all matters not covered by the Juvenile Code.

3. J.D. is entitled to credit time for the 35 days he was confined awaiting sentencing.

The response of the Court of Appeals to this argument was also straightforward. It reasoned that because the credit time statute was "substantive," not "procedural," Indiana Code section 31-32-1-1—which applies only to "procedures"—did not operate to import the credit time provisions of Indiana Code section 35-50-6-3 into the Juvenile Code. J.D., 826 N.E.2d at 147.

We reach the same result as the Court of Appeals but our analysis takes a somewhat different route.

First of all, we agree with the Court of Appeals that Indiana Code section 35-50-6-3 provides substantive rights and is not, therefore, incorporated into the Juvenile Code by operation of Indiana Code section 31-32-1-1. However, we do not think that disposes of the heart of J.D.'s claim. What J.D. seeks is credit against his one-year sentence for the 35 days he was confined prior to the date of his sentencing. That is, he seeks "credit for time served"—the credit toward

3

the sentence a prisoner receives for time actually served.  As <u>Purcell v. State</u> explained, credit for time served is different from "good time credit"—the additional credit a prisoner receives for good behavior and educational attainment.  721 N.E.2d 220, 222 (Ind. 1999).  The rights provided a prisoner by Indiana Code section 35-50-6-3 are rights to good time credit; that statute simply does not speak to the right to credit for time served.[1]

We believe that the inherent differences between the juvenile delinquency and adult criminal justice systems dictate that a juvenile offender is not entitled to credit for time served in detention prior to sentencing.  A key feature of the Juvenile Code is the broad range of alternatives a juvenile court judge has available once a child has been found by the court to be "a delinquent child," <u>i.e.</u>, to have committed an act that would be a crime if committed by an adult.  In the vocabulary of the Juvenile Code, these alternatives are called "dispositions" and the judge enters a "dispositional decree" (rather than a sentencing order).  In its dispositional decree, depending upon the circumstances of the particular case, the court can, <u>e.g.</u>, order supervision of the child by the probation department, order "wardship" of the child to the Department of Correction ("DOC"), or order confinement in a juvenile detention center, as well as order various other sanctions and treatment.  <u>See</u> Ind. Code §§ 31-37-19-5, 31-37-19-6, 31-37-19-8, 31-37-19-9 & 31-37-19-10 (2004).

In a case several years ago, Justice Rucker explained the Legislature's purpose in providing such flexibility in dispositional alternatives to juvenile judges:

> Our legislature has declared that it is the policy of this State and the purpose of our juvenile code to "ensure that children within the juvenile justice system are treated as persons in need of care, protection, treatment, and rehabilitation."  I.C. § 31-10-2-1(5).  This policy is grounded in the Progressive Movement of the late 19th and early 20th centuries, when American society rejected treating juvenile law violators the same as adult criminals in favor of individualized diagnosis and treatment.  <u>State ex rel. Camden v. Gibson Cir. Ct.</u>, 640 N.E.2d 696,

---

[1] Indiana Code section 35-50-6-3 provides that a "person assigned to Class I earns one (1) day of credit time for each day he is imprisoned for a crime or confined awaiting trial or sentencing"; a "person assigned to Class II earns one (1) day of credit time for every two (2) days he is imprisoned for a crime or confined awaiting trial or sentencing"; and a "person assigned to Class III earns no credit time."  A person imprisoned for a crime or imprisoned awaiting trial or sentencing is initially assigned to Class I but may be reassigned to Class II or Class III for violating a rule of the penal facility.  Ind. Code § 35-50-6-4 (2004).

697 (Ind. 1994). Consequently, a juvenile court judge:

> must seek to instill in the child a sense of value, impart a feeling of security and belonging, communicate the importance and dignity of being a member of society and, hopefully, in this manner, prevent the child from pursuing a criminal and anti-social career. A juvenile court judge must, in a unique manner, establish a relationship that will permanently alter the behavior patterns of the child. He must have patience, understanding, and a genuine interest in the welfare of the child and must direct all of his efforts toward rehabilitation.

Bible v. State, 253 Ind. 373, [389-90], 254 N.E.2d 319, 327 (1970) (citation omitted). To aid juvenile court judges, the legislature has put at their disposal "a myriad of dispositional alternatives to fit the unique and varying circumstances of each child's problems." Madaras v. State, 425 N.E.2d 670, 671 (Ind. Ct. App. 1981).

N.D.F., 775 N.E.2d at 1088-89.

Because of the flexibility as to dispositional alternatives that juvenile courts possess, we held in the N.D.F. case that in delinquency cases involving a special statute dealing with the disposition of cases involving recidivists, the State was not required to comply with the more exacting requirements that it faces in adult habitual offender cases.

Another case making this same point is In re Tina T., 579 N.E.2d 48 (Ind. 1991). In the course of rejecting an argument that certain provisions of the Juvenile Code then in effect were unconstitutional, we said:

> Unlike the [adult] criminal justice system, where a defendant serves a finite sentence and can anticipate release upon a day certain, a ward of the juvenile court remains under the court's continuing jurisdiction until he reaches the age of majority, the court discharges the ward in the exercise of its discretion, or guardianship is awarded by the court to the Department of Corrections. I.C. 31-6-2-3. Rather than a determinate term of imprisonment which can be shortened by good time credit, the continuous judicial oversight of a ward under the jurisdiction of the juvenile court extends over a variety of settings and can be terminated at any point at which the court determines that it is no longer necessary or appropriate. Even if the ward is committed to Boys or Girls School and guardianship is awarded to the Department of Corrections, appellees themselves point out that such commitment does not necessarily extend until the juvenile reaches the age of

5

majority, but may be terminated upon the determination of the DOC that a less restrictive placement has become appropriate.

Id. at 61.[2]

The broad authority of the juvenile court to fashion dispositional alternatives for juvenile offenders discussed in cases like N.D.F. and Tina T. leads us to conclude that the law does not require that a juvenile offender be provided credit for time served in pre-disposition detention. Expressed in the positive, the juvenile court's broad authority to fashion dispositional alternatives extends to discretion over how much, if any, of the time the juvenile offender has spent in pre-disposition confinement is entitled to credit. Expressed in the negative, requiring credit for the time a juvenile has spent in pre-disposition confinement would impermissibly impinge upon the juvenile court's broad authority to fashion dispositional alternatives.

We believe two additional matters warrant comment.

The quotation from the Tina T. case describes an adult sentence as a "determinate term of imprisonment" in which "a defendant serves a finite sentence and can anticipate release upon a day certain. . . ." Id. By contrast, the period of a juvenile's detention can be "terminated at any point" by the juvenile court (or the D.O.C.). Id.

In 1997, and subsequently, the Legislature has added to the Juvenile Code several sections that are often referred to as "determinate sentencing" provisions. For example, Indiana Code section 31-37-19-9 provides that a juvenile court can order wardship of a child found to have committed an act that, if committed by an adult, would be murder, kidnapping, rape, criminal deviate conduct, or aggravated robbery, to the DOC "for a fixed period that is not longer than the date the child becomes 18 years of age." In J.D.'s case, the court utilized one of the determinate sentencing provisions, Indiana Code section 31-37-19-10, to sentence J.D. to a fixed term of one year.[3]

---

[2] This passage is from a longer section in which the Court explained why a juvenile offender is not entitled to good time credit.
[3] Ind. Code § 31-37-19-10 provides that a juvenile court may place the child in an authorized penal or detention facility for not more than two years. It applies to a child found to have committed an act that, if

At least implicit in J.D.'s claim in this appeal is the notion that because our determinate adult sentencing regime provides credit for time served, credit for time served should also be available at least with respect to a sentence imposed under the Juvenile Code's determinate sentencing provisions.

We do not believe that the enactment of these "determinate sentencing" provisions affects our holding. It is true that once the juvenile court judge in this case imposed a sentence with a fixed term of one year, the judge no longer had authority to terminate the sentence at an earlier point in time. In this respect, "determinate sentencing" under the Juvenile Code does parallel adult criminal sentencing. But there is a critical difference, too. The juvenile court judge had the authority to decide whether to employ "determinate sentencing" in the first place; it was one of the juvenile court's "dispositional alternatives" to proceed under Indiana Code section 31-37-19-10 but the court was not required to utilize this provision. In this respect, we note that Tina T. referred to the fact that under certain circumstances the D.O.C., rather than the juvenile court, made (and still makes today) the determination of when the child is released. It is the flexibility that the juvenile court has in deciding whether the child will be placed with the D.O.C. at all, rather than the manner in which such a placement is terminated, that distinguishes the juvenile system from the adult—and makes credit for time served inapplicable.

The other matter warranting brief attention is J.D.'s contention that he is entitled to relief under the decision of the Court of Appeals in C.T.S. v. State, 781 N.E.2d 1193, 1204 (Ind. Ct. App. 2004), trans. denied, 792 N.E.2d 45 (Ind. 2003). We agree with the Court of Appeals in this case when it said:

> J.D. also asserts C.T.S. v. State entitles him to time-served credit. In C.T.S., this court remanded C.T.S.'s indeterminate sentence to the trial court and ordered the trial court to give C.T.S. time-served credit. However, C.T.S. involved an extraordinary period of months awaiting disposition, more akin to the constitutional

---

committed by an adult, would be a felony against a person, an aggravated controlled substance offense, or aggravated burglary. The child must have been at least 14 years of age at the time of the act and have had two unrelated prior adjudications of delinquency for acts that would be felonies if committed by an adult.

right of speedy trial.  Accordingly, J.D. may not rely upon <u>C.T.S.</u>'s unusual remand order.

<u>J.D.</u>, 826 N.E.2d at 147.

## Conclusion

We affirm the judgment of the trial court.

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.