**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Oct 08 2013, 5:25 am

**CLERK**

of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ERNEST P. GALOS**
Public Defender
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| D.H., | ) |
| | ) |
| Appellant-Respondent, | ) |
| | ) |
| vs. | ) No. 71A03-1304-JV-137 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Petitioner. | ) |

APPEAL FROM THE ST. JOSEPH PROBATE COURT
The Honorable James N. Fox, Judge
Cause No. 71J01-1204-JD-182

**October 8, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

D.H. admitted to the commission of a delinquent act that would constitute Class B felony robbery[1] if committed by an adult. D.H. appeals from his dispositional order contending that it is inappropriate and violates Article I, Section 23 of the Indiana Constitution and that the juvenile court erred in failing to grant him credit time.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts supporting D.H.'s adjudication are that around 8:40 p.m. on April 9, 2012, D.H., who was fifteen years old at the time, walked into a Family Dollar store in Mishawaka, Indiana. D.H. spoke to the cashier, Diane Brady ("Brady"), and asked her if the store carried "Dickie" t-shirts. Brady informed him that they carried Hanes t-shirts and directed him to the appropriate aisle of the store where they were located. A few minutes later, D.H. came up to the register carrying a home pregnancy test box and asked Brady how one administers the test. After Brady had explained the procedure, she bent to retrieve one of the tests from behind the counter. D.H. stated, "I'm not gonna pee on it." *Appellant's App*. at 248.

When Brady looked up, she saw that D.H. had aimed a pistol at her. D.H. demanded the money from the register, stating: "Give me all your money now or I swear on my momma I'll start shooting." *Id*. Brady then called her manager over to open the register. D.H. said: "You got five seconds to get that drawer open or I swear on my momma I'll start shooting." *Id*. The drawer was opened, and D.H. was given the money. He then ran out of the store and headed westbound in a car.

---

[1] *See* Ind. Code § 35-42-5-1.

2

Police officers intercepted the car that D.H. was driving as D.H. traveled westbound at a high rate of speed not far from the store. D.H. was in the car with two other individuals. Brady was transported to the scene of the traffic stop where she identified D.H. as the person who robbed her store. A handgun and a large sum of cash were found in the pocket of a jacket in the vehicle near the driver's seat. A check of the license plate of the vehicle revealed that the car had been reported stolen during a carjacking incident in Indianapolis.

At his initial hearing, D.H. admitted that he had committed the robbery. The juvenile court entered an order committing D.H. to the Department of Correction ("DOC") for a determinate sentence of two years. Because the juvenile court failed to inform D.H. of his right to appeal, D.H.'s petition to have the judgment set aside was granted.

A second dispositional hearing was held on March 20, 2013, at which D.H. was again committed to the DOC for a two-year determinate term. At the second dispositional hearing, on March 20, 2013, D.H. presented his mother's testimony about her efforts to have D.H. placed at the Damar Charter Academy in the Indianapolis area. She further testified that Cummins Behavioral systems could handle D.H.'s medication needs. D.H.'s mother had also investigated the possibility of placing D.H. at Resource Residential Treatment Facility, a facility that had been willing to accept D.H. at the time of his first dispositional hearing. However, none of the options his mother mentioned were immediately available. The juvenile court again committed D.H. to the DOC for a two-year determinate term and awarded him credit for the time spent in the DOC between his first dispositional hearing and the second hearing. D.H. now appeals.

**DISCUSSION AND DECISION**

D.H. claims that the juvenile court abused its discretion by placing him in the DOC for a determinate sentence of two years instead of an alternative placement outside of the DOC. A juvenile court's choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter left to the sound discretion of the juvenile court. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). We will reverse the juvenile court's dispositional order only if the juvenile court has abused its discretion. *Id.* A juvenile court abuses its discretion when its action is clearly erroneous and against the logic and effect of the facts and circumstances before the juvenile court or the reasonable, probable, and actual inferences that can be drawn therefrom. *C.C. v. State*, 831 N.E.2d 215, 217 (Ind. Ct. App. 2005). "Hence, the juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles." *J.S.*, 881 N.E.2d at 28.

The juvenile court's discretion is subject to three statutory considerations: 1) the welfare of the child; 2) the safety of the community; and 3) the policy of favoring the least harsh disposition. *Id.* Indiana Code section 31-37-18-6 provides that the least restrictive placement of the juvenile is required only if it is consistent with the "safety of the community and the best interest of the child. . . ." "To aid juvenile court judges, the legislature has put at their disposal 'a myriad of dispositional alternatives to fit the unique and varying circumstances of each child's problems.'" *N.D.F. v. State*, 775 N.E.2d 1085, 1089 (Ind. 2002) (quoting *Madaras v. State*, 435 N.E.2d 560, 561 (Ind. 1982)). With that flexibility in mind, and guided by the overarching purpose of rehabilitation in the juvenile justice system,

4

the legislature enacted the juvenile determinate sentencing statute, which is a statutory recognition that "[i]n some instances, confinement may be one of the most effective rehabilitative techniques available." *Id.* (quoting *Madaras v. State*, 425 N.E.2d at 672)). D.H. contends, however, that his determinate sentence in the DOC is not an effective rehabilitative technique for him.

Here, D.H. had been released early from a commitment to the DOC for just two months before he aimed a loaded handgun at an employee of a Family Dollar store, demanded money, and threatened to kill her, and potentially others in the store. The conduct that had led to his prior commitment in the DOC was an act that would constitute carjacking. While committed to the DOC, D.H. had worked through his growth plan to a level four, leading to a modification of his placement. Similarly, in his latest placement, D.H. had worked his way to level four in his growth plan at the DOC.

D.H. argues that his ability to attain such growth in the DOC "had reached a maximum level of help" and that he "was surrounded by people that had no intention of reformation and would only corrupt him." *Appellant's Br.* at 13. To the extent that D.H.'s argument suggests that he has received the complete benefits of resources available through the DOC, we disagree. Even after previously achieving a favorable growth level through the structure of the DOC, once removed from the DOC structure, D.H. pointed a loaded handgun at a store employee in order to steal money, threatening to kill her if his demand was not met. Furthermore, D.H.'s characterization of his demotion, just prior to the second dispositional hearing, from growth level four to growth level three, as illustrative of something that "was

5

unfortunate, but also reflects D.H.'s frustration" is likewise unpersuasive. *Id*. at 12.

D.H.'s behavioral choices demonstrate the difficulty he has maintaining good behavior in a highly structured environment and that he is unlikely to conform his behavior in a less-structured environment. D.H.'s behavior outside the DOC has led to criminal behavior escalating from thefts and runaways, to carjacking and now armed robbery. D.H. was on probation when he committed his most recent offense, the last of a history of offenses totaling seventeen delinquency referrals and four prior adjudications; one for criminal conversion, two for theft, and one for carjacking. The juvenile court reached an appropriate disposition in light of D.H.'s welfare and the safety of the community.

D.H. also asserts that the juvenile court erred by failing to award him credit for time served prior to the entry of any dispositional order. The State asserts, and we agree, that this issue has been resolved contrary to D.H.'s position by our Supreme Court in *J.D. v. State*, 853 N.E.2d 945 (Ind. 2006). In that case a similar argument was presented and rejected as follows:

> We believe that the inherent differences between the juvenile delinquency and adult criminal justice systems dictate that a juvenile offender is not entitled to credit for time served in detention prior to sentencing. A key feature of the Juvenile Code is the broad range of alternatives a juvenile court judge has available once a child has been found by the court to be "a delinquent child," i.e., to have committed an act that would be a crime if committed by an adult. In the vocabulary of the Juvenile Code, these alternatives are called "dispositions" and the judge enters a "dispositional decree" (rather than a sentencing order). In its dispositional decree, depending upon the circumstances of the particular case, the court can, e.g., order supervision of the child by the probation department, order "wardship" of the child to the Department of Correction ("DOC"), or order confinement in a juvenile detention center, as well as order various other sanctions and treatment. See

6

Ind. Code §§ 31–37–19–5, 31–37–19–6, 31–37–19–8, 31–37–19–9 & 31–37–19–10 (2004).

853 N.E.2d at 947.

Our review of the transcript of the sentencing hearing reveals the following exchange between the parties and the juvenile court:

THE COURT: Sure. My order will indicate that he should receive absolute credit for all the time he's had; that even though it's a two[-]year sentence, that he's already got 7 months in, so I think everybody standing here understands that it's a one year and five months sentence at this point. Is that fair enough? I don't think anyone sees it different[ly] than that.

MR. GALOS: The fact is, Your Honor, if you give him credit for all the time he's been in the JJC also, I mean it's essentially I think just a little over a year then in reality.

MR. RAPER: I think, Your Honor, what we'd be talking about is from the date of disposition. It would be from August 17.

MR. GALOS: From disposition it's not 215 days. He had 134 days in prior to that also, so I didn't know if that was going to be counted toward--.

*Tr.* at 30.

D.H. claims that he should be given credit time because he was given more than the maximum allowable determinate sentence. *See* Ind. Code § 31-37-19-10(b) ("A court may place the child in a facility authorized under this chapter for no more than two (2) years."). D.H.'s original dispositional hearing was on August 17, 2012. After that disposition was entered, and subsequently overturned, a second dispositional hearing was held. At that hearing, the juvenile court awarded D.H. credit for the time he spent in the DOC between his

7

first, now overturned, dispositional hearing and the second hearing, a period of roughly seven months. His birthday is June 7, 1996, and he will turn eighteen years old on June 7, 2014, or forty days before he would have served a full two years on his determinate sentence. Under the holding in *J.D.*, the juvenile court could not award D.H. credit for the time he was detained prior to his first dispositional hearing on August 17, 2012. However, the juvenile court could, and did, give D.H. credit for the seven months he was confined between dispositional hearings. Thus, D.H. has failed to establish juvenile court error here, as his maximum, dispositional sentence did not exceed two years.

D.H. further argues that D.H.'s inability to receive credit for pre-disposition confinement constitutes disparate treatment in violation of Article I, Section 23 of the Indiana Constitution. Article I, Section 23 provides that "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." He argues that since an adult convicted of a crime is granted credit for time served in confinement before sentencing, the same privilege should be accorded to a juvenile who commits an offense that would be a crime if committed by an adult.

"When considering the constitutionality of a statute, we begin with the presumption of constitutional validity, and therefore the party challenging the statute labors under a heavy burden to show that the statute is unconstitutional." *Person v. State*, 661 N.E.2d 587, 592 (Ind. Ct. App. 1996). "Notwithstanding that the privileges and immunities cases brought under Section 23 have often assimilated federal equal protection analysis, we are under no

8

obligation to follow Fourteenth Amendment jurisprudence in resolving a Section 23 issue." *Collins v. Day*, 644 N.E.2d 72, 75 (Ind. 1994). Our Supreme Court has concluded that "there is no settled body of Indiana law that compels application of a federal equal protection analytical methodology to claims alleging special privileges and immunities under Indiana Section 23 and that Section 23 should be given independent interpretation and application." *Id.* Where statutes appear to unequally burden two classes of people, here, adults and juveniles, the Supreme Court has explained the following requirements under the Indiana Constitution:

> First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

*Id.* at 80.

Looking to the first requirement, we conclude that Indiana Code section 31-37-19-10 applies to all juveniles who possess two prior felony-level adjudications and who commit certain offenses. The absence of a statutory provision awarding pre-disposition credit is applicable to all juveniles in every case. Furthermore, juvenile proceedings are unlike criminal proceedings because they are civil in nature. *J.V. v. State*, 766 N.E.2d 412, 414 (Ind. Ct. App. 2002). An act of juvenile delinquency is not a crime. *Id.* Nonetheless, the State bears the burden of proving the delinquent act beyond a reasonable doubt in order to obtain a true finding. *Id.* at 415. "As such, the statutory scheme for dealing with minors who commit crimes is vastly different from the statutory scheme directed to adults who commit

9

crimes. . . . This policy is consistent with the State's primary interest in rehabilitation, rather than the punishment of juvenile delinquents." *J.C.C. v. State*, 897 N.E.2d 931, 935 (Ind. 2008).

In *J.D.*, our Supreme Court quoted from its opinion in *In re Tina T.*, 579 N.E.2d 48, 61 (Ind. 1991), another appeal challenging certain juvenile code provisions as unconstitutional, as follows:

> Unlike the [adult] criminal justice system, where a defendant serves a finite sentence and can anticipate release upon a day certain, a ward of the juvenile court remains under the court's continuing jurisdiction until he reaches the age of majority, the court discharges the ward in the exercise of its discretion, or guardianship is awarded by the court to the Department of Corrections. I.C. 31–6–2–3. Rather than a determinate term of imprisonment which can be shortened by good time credit, the continuous judicial oversight of a ward under the jurisdiction of the juvenile court extends over a variety of settings and can be terminated at any point at which the court determines that it is no longer necessary or appropriate. Even if the ward is committed to Boys or Girls School and guardianship is awarded to the Department of Corrections, appellees themselves point out that such commitment does not necessarily extend until the juvenile reaches the age of majority, but may be terminated upon the determination of the DOC that a less restrictive placement has become appropriate.

853 N.E.2d at 948. The Supreme Court further concluded "that the enactment of these 'determinate sentencing' provisions" affected the holding that juveniles should not be awarded credit time for pre-dispositional confinement. *Id*. at 949. We reject this aspect of D.H.'s argument along this vein.

D.H. claims that by being denied credit time for pre-dispositional confinement he is being treated more harshly than if he were an adult. We are unpersuaded by this argument because an adult who committed robbery while armed with a handgun, who had two prior

unrelated felony convictions, and who was on probation at the time of the commission of the offense, would be subject to a minimum of six years executed in the DOC, and up to a maximum of fifty years executed in the DOC. Ind. Code §35-42-5-1; Ind. Code §§ 35-50-2-5 & 8. Thus, if D.H. had been subject to adult criminal proceedings, he would not have received a sentence of two years and ninety-four days in the DOC. He would have had to have been confined pre-disposition for four years before it would be possible for an adult to receive such a sentence as D.H. received.

This would be so for any juvenile found delinquent for committing what would be Class B felony robbery and who had two prior felony-equivalent adjudications. A juvenile would have to have his disposition no later than his sixteenth birthday in order to receive a full two-year disposition. That, coupled with the four years of pre-disposition confinement necessary to make the sentences equal, would mean that only juveniles less than twelve years of age could be in such a position. However, twelve-year-olds are not eligible for determinate sentencing. Ind. Code § 31-37-19-9. Every offense eligible for determinate sentencing in the juvenile context, would relate to a Class B felony offense or higher if committed by an adult. Accordingly, there are no set of juveniles who could be treated as harshly as the most leniently treated adult in the same situation. We conclude that there was no constitutional violation in the dispositional order entered in D.H.'s adjudication.

Affirmed.

ROBB, C.J., and RILEY,J., concur.

11