## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 30 2019, 9:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeremy P. Gooch
Chief Public Defender
Danville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

J.S.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

August 30, 2019

Court of Appeals Case No.
19A-JV-470

Appeal from the Hendricks
Superior Court

The Honorable Karen Love, Judge

Trial Court Cause No.
32D03-1901-JD-9

**Friedlander, Senior Judge.**

[1] After J.S. admitted to violating the conditions of his probation for a prior juvenile adjudication by possessing marijuana and admitting to the new charge of possessing marijuana, he was adjudicated a delinquent child. The juvenile

court entered an order that he be placed under supervised probation for a period of six months and complete an inpatient substance abuse treatment program at White's Residential Treatment Facility. J.S. appeals, contending that while the juvenile court had the authority to issue an order placing him in a residential treatment facility, the juvenile court nonetheless abused its discretion by entering its order without considering the statutory factors for juvenile dispositional orders. We affirm.

[2] On January 9, 2019, J.S. was traveling eastbound in a car on US 40, also referred to as Main Street, in Plainfield, Indiana. A Plainfield Police Department officer observed J.S. disobey a red-light signal at the intersection of Carr Road and East Main Street. After the officer stopped and approached the vehicle, he detected an odor commonly associated with raw marijuana. The officer informed J.S. that he suspected marijuana was in the vehicle. J.S. told the officer that he had purchased twelve grams of marijuana and that it was located in a compartment in the front of the car.

[3] J.S. was serving probation for a previous adjudication for possessing marijuana. He had previously violated the terms of his probation by testing positive on two drug screens and missing two other screens. Two days prior to the traffic stop, J.S. appeared in court for those probation violations. The juvenile court continued his probation in that case.

[4] On January 29, 2019, the State filed a delinquency petition in which it alleged that J.S. was a delinquent child for possessing marijuana. After the court

authorized the filing of the petition, the parties appeared for the initial hearing on February 4, 2019. At the hearing, J.S. admitted to the offense of possession of marijuana, and, by agreement of the parties, proceeded to a disposition hearing. The juvenile court, after hearing evidence from both parties, including J.S.'s request to remain on home detention and the probation officer's preference that he be placed in an inpatient program, entered an order placing J.S. on probation for six months, obeying a 9:00 p.m. curfew, and completing the inpatient program at White's Residential Treatment Facility. The juvenile court entered an order finding that J.S.'s probation in the previous juvenile adjudication should be terminated as unsuccessful.

[5] J.S. now appeals, not challenging the juvenile court's authority to order him to attend a residential treatment facility but challenging whether the juvenile court properly considered the statutory factors for disposition prior to entering the dispositional order.

[6] Once a child is adjudicated a delinquent child, the juvenile court then enters a dispositional decree providing for the placement of the child, any sanctions, and treatment. *R.J.G. v. State*, 902 N.E.2d 804 (Ind. 2009). The purpose of dispositional decrees is to promote rehabilitation of the juvenile. *Id.* (citing *J.D. v. State*, 853 N.E.2d 945 (Ind. 2006)). Ideally, the dispositional decree should be formulated in such a fashion that the juvenile is deterred from committing more offenses in the hope that the juvenile can "straighten out his life before the stigma of criminal conviction and the resultant detriment to society is realized." *Jordan v. State*, 512 N.E.2d 407, 409 (Ind. 1987).

In choosing the correct disposition for the child, the juvenile court has a vast array of options in selecting a dispositional decree specifically tailored for the unique needs of the particular child. *R.J.G.*, 902 N.E.2d at 806. However, the juvenile court is required to consider the options set forth in Indiana Code section 31-37-18-6 (1997), which provides as follows:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> (A) in the least restrictive (most family like) and most appropriate setting available; and
>
> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Thus, the juvenile court is given discretion to determine what is in the best interest of the child but is required to consider the statutory factors in doing so.

*J.S. v. State*, 881 N.E.2d 26 (Ind. Ct. App. 2008). An abuse of discretion occurs when the juvenile court's dispositional order is clearly erroneous and against the logic and effect of the facts and circumstances before the juvenile court or the reasonable, probable, and actual inferences that can be drawn therefrom. *Id.* On appeal from a juvenile adjudication and disposition, we do not reweigh the evidence or reassess the credibility of witnesses. *C.T.S. v. State*, 781 N.E.2d 1193 (Ind. Ct. App. 2003) (citing *J.V. v. State*, 766 N.E.2d 412 (Ind. Ct. App. 2002)).

[9] Under the judicial temperance presumption, we generally presume that in a proceeding tried to the bench, a court renders its decisions solely on the basis of relevant and probative evidence. *Konopasek v. State*, 946 N.E.2d 23, 28 (Ind. 2011). Although this cited case involves a criminal appeal as opposed to a juvenile adjudication and disposition, we find that the same principles apply to our review of this appeal.

[10] Here, the juvenile court heard evidence from J.S.'s probation officer that J.S. had two positive screens for marijuana and had missed two drug screens, all of which were in violation of the conditions of his probation. The probation officer further testified that J.S. had dropped out of outpatient counseling. Two days after being detained and having his probation continued for the probation violations, J.S. was charged with the new violation. Further, J.S. admitted to his probation officer that while he was on home detention, he found some marijuana that he had hidden in his room at his mother's house and used it the night before meeting with his probation officer.

[11]     Because of his marijuana use, J.S. was transferred to an alternative school.  He did not have behavioral issues necessitating the change, but the change was made because he was missing school and was so far behind in his educational progress.  J.S. lives with his mother, who is in recovery for substance abuse issues, and his father, who lives in another town, has also had substance abuse issues.

[12]     J.S. told the court that he started using marijuana at a young age because of issues with his parents' relationship.  He indicated that he used marijuana to help him sleep and not worry about things such as his poor performance in school.  He admitted that he suffers from anxiety about a variety of things including his legal issues.

[13]     J.S., in support of his argument, points to his testimony and his mother's testimony that he had recently sought help through a counseling and wellness center and was prescribed medication to address his issues with ADHD.  The probation officer noted, however, that J.S. did not seek this additional treatment until he and his mother learned that the probation officer would be recommending that he be placed in a residential treatment facility.  Further, J.S.'s first instinct upon learning of the placement recommendation was to say that he would leave his mother's house.  Additionally, at the time of the hearing, J.S. was approximately a month away from his eighteenth birthday.  His mother disagreed with the placement in the residential facility in part because of the two-hour drive from her home.

[14]     J.S.'s attorney argued to the juvenile court that he believed J.S.'s mother was being more proactive in his care and had sought treatment facilities for him. He acknowledged that it would have been better had J.S.'s mother acted sooner. He stated that J.S.'s mother admitted that she "waited too long to do this" and that she "dropped the ball on getting the treatment." Tr. Vol. 2, p. 28.

[15]     Prior to announcing the disposition, and in response to J.S.'s attorney's suggestion that J.S. remain at home so he could continue with his new medication, the juvenile court stated as follows:

> And, if this doesn't work and I don't send him to residential now, the closer he gets to 18 the harder it is to get him placed anywhere and I think we're left with, you know, the DOC as an alternative. That [sic] not a very good alternative. Um, I'm just sort of thinking out loud here in terms of where we are. I'd much rather try the residential than to have to ever consider DOC.

*Id.* J.S. was instructed to bring his new medication with him along with the prescription when he went to the residential facility.

[16]     Here, there was ample relevant and probative evidence presented to the juvenile court to inform the juvenile court's dispositional decree. J.S. had been given opportunities to address his problems with marijuana through probation, intensive outpatient treatment, and home detention. Each of the options had proven to be ineffective. J.S. had just had his probation continued two days prior when he was detained on the new charge. The juvenile court heard testimony from J.S.'s mother about her medical condition and how it might be difficult to participate in J.S.'s treatment at the residential facility. After hearing

that evidence, the juvenile court decided that the most appropriate placement for J.S. was in a residential facility instead of a more restrictive placement at the DOC. We find no abuse of discretion in the juvenile court's disposition.

[17] Judgment affirmed.

Kirsch, J., and Brown, J., concur.